UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL H. JERROLDS,

       Plaintiff,                       CIVIL ACTION NO. 10-15095

    v.                                 DISTRICT JUDGE DENISE PAGE HOOD

COMMISSIONER OF               MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On December 23, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and Disability Insurance benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 8, 11).

    *B.    Administrative Proceedings*

Plaintiff filed the instant claims on August 4, 2008, alleging that he became unable to work on March 14, 2008 (Tr. 15, 105-110). The claim was initially disapproved by the Commissioner on October 16, 2008 (Tr. 15, 63-66). Plaintiff requested a hearing and on April 22, 2010, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Elliott Bunce, who considered the

case *de novo*. In a decision dated April 29, 2010, the ALJ found that Plaintiff was not disabled (Tr. 12-24). Plaintiff requested a review of this decision on May 22, 2010 (Tr. 10-11). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-8F, Tr. 236-245), the Appeals Council, on October 20, 2010, denied Plaintiff's request for further review (Tr. 1-5 ).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.  STATEMENT OF FACTS

### A.  *ALJ Findings*

Plaintiff was 50 years old on his alleged disability onset date (Tr. 19). Plaintiff's past relevant work history included work as assembly line worker, fork-lift truck driver and maintenance worker (Tr. 135-138). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since March 14, 2008 (Tr. 17). At step two, the ALJ found that Plaintiff had the following "severe" impairment: degenerative disc disease. *Id*. At step three, the ALJ found no evidence that Plaintiff's impairment met or equaled one of the listings in the regulations (Tr. 17). Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "the full range of light

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

work" (Tr. 18-19). At step four, the ALJ found that Plaintiff could not perform his previous work (Tr. 19). At step five, the ALJ denied Plaintiff benefits, as the ALJ found – based on an application of the Medical-Vocational Guidelines, or "Grids" – that Plaintiff could perform a significant number of jobs available in the national economy (Tr. 20).

### B. *Medical Evidence*

Plaintiff sought treatment from Eugene N. Chardoul, M.D., his primary care physician, on several occasions between 2007 and 2009 for complaints of neck and shoulder pain (Tr. 168-205). In April 2007, Plaintiff reported that in his present job he was doing grunt work lifting, tugging, and pushing (Tr. 210). Dr. Chardoul treated Plaintiff with ice, heat and a pain reliever (Tr. 210). Plaintiff's September 2007 cervical spine MRI showed spondylosis (Tr. 166-67).

In early 2008, Plaintiff still had complaints of pain and Dr. Chardoul referred him to Dr. Zahoor, a neurologist, for an assessment of his neck problem and also noted that Plaintiff might require physical therapy (Tr. 203).

In March 2008, Plaintiff again complained of neck and back pain (Tr. 211). Dr. Chardoul put Plaintiff on "sick leave" while he performed more laboratory studies (Tr. 211). Dr. Chardoul recommended ice, heat, range of motion exercises, and anti-inflammatory and analgesic medications (Tr. 212). In May 2008, Plaintiff complained to Dr. Chardoul of pain in his left leg with swelling (Tr. 195). In late May 2008, Dr. Chardoul urged Plaintiff to use ice and heat, do range of motion exercises, and attend physical therapy (Tr. 192). Dr. Chardoul also noted that Plaintiff was afraid of having injections for pain (Tr. 192).

On June 6, 2008, Dr. Chardoul noted that Plaintiff had finally started physical therapy, but that therapy should have been started a year earlier (Tr. 190). In late June 2008, Dr. Chardoul

planned to have repeat x-rays and an MRI done, but the results of any such tests do not appear in the record (Tr. 188).

On July 9, 2008, Dr. Chardoul gave Plaintiff an injection for pain (Tr. 186). On July 30, 2008, Dr. Chardoul filled out a form for Plaintiff's employer, which stated that Plaintiff was unable to engage in any employment (Tr. 234-35).

On July 22, 2008, Dr. Chardoul noted that Plaintiff needed to follow through with therapy and do "whatever else was necessary" to keep him improved (Tr. 243).

In January, May and June 2009, Plaintiff was given injections and directed to go to physical therapy (Tr. 239, 240 & 242). In June 2009, Dr. Chardoul reported that Michigan PT was doing a splendid job (Tr. 239). On August 27, 2009, Plaintiff reported that he had time to spend with his children now that he had gotten "out of the [GM] plant" (Tr. 238).

Plaintiff received additional injections in October 2009 and December 2009 (Tr. 236-37). In December 2009, Plaintiff reported difficulty with housecleaning, laundry and yard work, but noted that he was getting more relief from physical therapy (Tr. 236).

On October 13, 2008, Plaintiff had a consultative examination with Neil A. Friedman, M.D. (Tr. 220-22). Plaintiff's physical examination was essentially normal, other than slight discomfort localized to the left lateral neck on full cervical rotation and lateral flexion to the left (Tr. 221-22). Plaintiff's active cervical and lumbosacral range of motion was full (Tr. 216-17, 221). Straight leg-raising was full to 90 degrees without complaint of discomfort, and Plaintiff walked with a normal gait (Tr. 215, 221). Dr. Friedman opined that Plaintiff did not demonstrate any functional impairment or physical limitations and that there was no indication of a need to restrict activities or hours related to potential employment (Tr. 222).

On October 15, 2008, Annmarie Eggert, a non-medical state agency adjudicator, completed a physical residual functional capacity (RFC) assessment finding that Plaintiff could perform light work, but only with certain postural and environmental limitations (Tr. 223-30).

### C.    *Plaintiff's Claims of Error*

Plaintiff raises two arguments on appeal: (1) that the ALJ erred in relying on the "Grids," because the Grids only apply where the claimant has no non-exertional limitations; Plaintiff avers he has non-exertional limitations and that a state agency adjudicator – Ms. Eggert – recognized as much; and (2) that the ALJ did not give good reasons for discounting the opinion of Plaintiff's treating physician – Dr. Chardoul.

## III.    DISCUSSION

### A.    *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial

evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The

substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x. 521, 526 (6th Cir. 2006).

### B. *Governing Law*

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who

become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C.   *Analysis and Conclusions*

As noted earlier, Plaintiff raises two argument on appeal. Each argument is considered below:

#### 1. The ALJ Properly Applied The "Grids"

Plaintiff's first argument on appeal is that the ALJ erred in relying solely on the Medical-Vocational Guidelines – otherwise known as the "Grid" – in determining at step five that Plaintiff is not disabled. The Commissioner can meet his burden at step five of his analysis by referring to the Grids, 20 C.F.R. Pt. 404, Subpt. P, App. 2, which dictates a finding of "disabled" or "not disabled" based on a claimant's exertional restrictions, age, education, and prior work experience. *See Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir.1990). But, if a claimant has both exertional and non-exertional impairments, the Commissioner is not permitted to rely on the Grid alone to determine whether a disability exists. *See id.* at 1173-74; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e). If a claimant's non-exertional limitations prevent the claimant from doing the full range of work at the designated level, then the Commissioner must come forward with some reliable evidence showing that there remain a significant number of jobs

that the claimant can perform, taking into account the claimant's exertional and non-exertional limitations. *See Shelman v. Heckler*, 821 F.2d 316, 321-22 (6th Cir. 1987). Non-exertional impairments are defined as "certain mental, sensory, or skin impairments" or "impairments [which] result solely in postural and manipulative limitations or environmental restrictions." 20 C.F.R. Part 404, Subpt. P, App. 2, Section 200.00(e). "[B]efore reaching the conclusion that the grid will not be applied because [of the alleged] nonexertional limitations, those limitations must be severe enough to restrict a full range of gainful employment at the designated level." *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 985 (6th Cir. 1987); *see Collins v. Comm'r of Soc. Sec.*, 357 Fed. App'x 663, 670 (6th Cir. 2009).

Plaintiff primarily argues that the ALJ erred in failing to recognize that Plaintiff suffered from non-exertional limitations since a state agency adjudicator – Annmarie Eggert – completed a physical residual functional capacity (RFC) assessment finding that Plaintiff could perform "light" work, but only with certain postural and environment (*i.e.* non-exertional) limitations (Tr. 223-30). Defendant responds that Ms. Eggert is a non-medical source, therefore, the RFC assessment was not a "medical opinion" and the ALJ was not required to consider it as such or to accord it any special deference. Defendant is correct – Ms. Eggert's non-medical opinion was not entitled to any special deference. *See* 20 C.F.R. § 404.1527(a)(2).

Moreover, there is no requirement that the ALJ discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party" (internal quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (*en banc*) (noting that the substantial evidence standard "presupposes ... a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

Here, substantial evidence supports the ALJ's decision to depart from the opinion expressed in the RFC form completed by Ms. Eggert, particularly in light of Dr. Friedman's consultative examination. On October 13, 2008 – a mere two days before Ms. Eggert completed the RFC form at issue – Dr. Friedman examined Plaintiff and opined that Plaintiff's physical examination was essentially normal, that Plaintiff did not demonstrate any functional impairment or physical limitations and that there was no indication of a need to restrict activities or hours related to potential employment (Tr. 220-222). The ALJ was entitled to rely on the opinion of Dr. Friedman, and I find no error in the ALJ's application of the Grids in this matter.

### 2. The ALJ Properly Considered Plaintiff's Treating Physician

As to Plaintiff's second argument on appeal – that the ALJ did not give good reasons for discounting Dr. Chardoul's opinion – I note at the outset that Dr. Chardoul's conclusion that Plaintiff is totally disabled from any occupation (Tr. 234-235) is not entitled to any deference since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Comm'r of Soc. Sec.*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Comm'r of Soc. Sec.*, 280 Fed. App'x 472, 475–76 (6th Cir. 2008); 20 C.F.R. § 416.927(e)(1) (Commissioner is responsible for deciding the ultimate issue of disability and a statement by a medical source that you are "disabled" or "unable to work" does not mean that claimant will be found disabled); SSR 96-5p, 61 Fed.Reg.

34471, 34472, 1996 WL 374183 (1996) (the issue of whether an individual is "disabled" under the Act is an administrative finding reserved to the Commissioner).

Next, "[g]enerally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion is not, however, entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Comm'r of Soc. Sec.*, 295 Fed. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. App'x 336, 340 (6th Cir. 2008). An opinion that is based on Plaintiff's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs*., 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007).

In this matter, the ALJ's decision does, in fact, consider and weigh Dr. Chardoul's opinion:

> In 2008 Dr. Chardoul indicated that [Plaintiff] had back, neck, arm, and leg pain that "totally disabled him" and prevented him from functioning, but I do not consider the opinion controlling on the issue of disability. The records at hand cover a period of less than 12 consecutive months, and, as discussed, [Plaintiff's] testimony was that more-recent treatment consists of injections for pain. Dr. Chardoul notes [Plaintiff's] pain, often very severe, in records from February through August 2008, but there is no objective evidence that the pain continued at that level. I note that [Plaintiff] has not been hospitalized or treated at an emergency room during the relevant period for an exacerbation of his pain.
>
> At the hearing, [Plaintiff] testified that he continues treatment with Dr. Chardoul, but it consistent [sic] only of injections for pain every four-to-six weeks. He denied side

> effects from his pain medication. He also testified that his condition is stable. [Plaintiff] indicates that he is unable to work, but his testimony about his daily activities is consistent only with a finding that he has some limitations because of his degenerative disc disease, but they are not so significant as to preclude work at the light exertional level. He testified to daily low back pain and neck pain, but he maintains a driver's license, and drives, albeit on a local basis only. He maintains his own home and is independent in his self-care. He testified that he does dishes using a dishwasher. He does chores such as cleaning and shopping although he gets help from his daughter with these tasks. He also testified that he uses a snow blower in the winter and a riding and push lawnmower in the summer, but that these activities are limited to no more than 30- minutes at a time because they aggravate his back pain.

(Tr. 18-19) (citations omitted)

Based on the above narrative, the undersigned finds that the ALJ did, in fact, perform a careful review of all the evidence, and did not commit reversible error in his application of the treating source rule to that evidence. In other words, the ALJ's decision to discount Dr. Chardoul's opinion is supported by substantial evidence. As noted by the ALJ, Dr. Chardoul's opinion of disability was inconsistent with his limited and conservative treatment of Plaintiff with pain medication and injections for pain every four to six weeks (Tr. 18, 54). Plaintiff was never hospitalized or treated at an emergency room for an exacerbation of pain (Tr. 18, 164-212, 236-45). At the hearing, Plaintiff denied side effects from his pain medication (Tr. 18, 54). Plaintiff also testified that with treatment from Dr. Chardoul, his condition remained at a "status quo" (Tr. 18, 58).

Moreover, Dr. Chardoul's opinion was inconsistent with that of the consultative examiner, Dr. Friedman (Tr. 19, 220-22). Dr. Friedman found that Plaintiff had an active cervical and lumbosacral range of motion that was full, with only slight discomfort localized in his left lateral neck (Tr. 19, 220-22). Dr. Friedman further opined that Plaintiff demonstrated no functional impairment or physical limitations (Tr. 19, 220-22). Finally, Dr. Chardoul's opinion was inconsistent with Plaintiff's extensive daily activities, such as driving a car, riding a bicycle, doing chores and dishes and using a snow blower, riding and push lawnmowers (Tr. 19, 52, 147, 149-53).

The ALJ could reasonably determine that these activities were simply not consistent with Plaintiff's claim of total disability.

In sum, based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*), and should not be disturbed by this Court.

### III.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless,

by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>
Mark A. Randon<br>
United States Magistrate Judge

Dated:  December 11, 2011

CERTIFICATE OF SERVICE

*I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 11, 2011.*

*s/Melody R. Miles*<br>
*Case Manager to Magistrate Judge Mark A. Randon*<br>
*(313) 234-5542*